STARN • O'TOOLE • MARCUS & FISHER
A Law Corporation

| | |
|---|---|
| TERENCE J. O'TOOLE | 1209-0 |
| ANDREW J. LAUTENBACH | 8805-0 |
| MAILE S. MILLER | 10179-0 |

Pacific Guardian Center, Makai Tower
733 Bishop Street, Suite 1900
Honolulu, Hawaii  96813
Telephone:  (808) 537-6100
Email:  totoole@starnlaw.com
        alautenbach@starnlaw.com
        mmiller@starnlaw.com

Attorneys for Plaintiff
IRONGATE AZREP BW LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| IRONGATE AZREP BW LLC,<br><br>         Plaintiff,<br><br>    vs.<br><br>INGRID WANG,<br><br>         Defendant. | CIVIL NO. _____<br><br>**COMPLAINT** |

## **COMPLAINT**

Plaintiff IRONGATE AZREP BW LLC ("***Irongate***"), by and through its undersigned attorneys, hereby asserts this Complaint against Ingrid Wang ("***Wang***" or "***Defendant***") and alleges and avers as follows:

## PARTIES

1. Irongate is, and at all relevant times has been, a Delaware limited liability company.

2. Upon information and belief, Wang is, and at all relevant time has been, a Hawaii resident.

## JURISDICTION

3. This Court is the appropriate venue for the resolution of claims under 28 U.S.C. 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred in the State of Hawaii. There is complete diversity of citizenship among the parties and the matter in controversy exceeds $75,000.00.

## FACTUAL BACKGROUND

4. Irongate is the developer of the Trump International Hotel & Tower® Waikiki Beach Walk® (the "*Project*").

5. Wang is, and at all relevant times has been, the sole member of four Hawaii limited liability companies, named Sunday's Child, LLC, Sunday's Third Child, LLC, Sunday's Fourth Child, LLC, and Sunday's Fifth Child, LLC (collectively the "*Sunday's Entities*").

6. On or around November 9, 2006, Wang, through Sunday's Child, LLC, entered into a sales contract for the purchase of Unit 3607 at the Project.

7. On or around November 9, 2006, Wang, through Sunday's Third Child, LLC, entered into a sales contract for the purchase of Unit 2005 at the Project.

8. On or around November 9, 2006, Wang, through Sunday's Fourth Child, LLC, entered into a sales contract for the purchase of Unit 2205 at the Project.

9. On or around November 9, 2006, Wang, through Sunday's Fifth Child, LLC, entered into a sales contract for the purchase of Unit 2217 at the Project.

10. Units 3607, 2005, 2205, and 2217 are collectively referred to herein as the "*Units*." The sales contracts for the Units are collectively referred to herein as the "*Sales Contracts*."

11. Upon information and belief, Wang entered into a separate Sales Contract and purchased Unit 2003 through Sunday's Second Child, LLC. Upon information and belief, Wang is also the sole member of Sunday's Second Child, LLC. Unit 2003 is owned by ESY LLC; the May 28, 2010 deed was signed by Ingrid Wang on behalf of ESY.

12. Pursuant to the Sales Contracts, Wang, through the Sunday's Entities, made deposits totaling $1,439,320.00 for the four Units.

13. Under section D(37) of the Sales Contracts, upon the Sunday's Entities' default, Irongate was entitled to (1) seek specific performance, or (2) terminate the Sales Contracts and retain the greater of 15% of the purchase price of the units or the amount of actual damages suffered by Irongate due to Plaintiffs' breach.

14. In or around July 2009, disputes arose between the Sunday's Entities and Irongate related to the Sales Contracts.

15. In or around August 2009, Wang, through the Sunday's Entities, and each of them, failed to close on the respective Units, and thereby breached the Sales Contracts.

16. On or about May 13, 2011, Wang, through the Sunday's Entities, and Irongate entered into an agreement that resolved all existing disputes between the parties (the "*Settlement Agreement*").

17. Under the Settlement Agreement, Irongate agreed, among other things:

   a. to waive the Sunday's Entities' defaults under the Sales Contracts;

   b. to provide the Sunday's Entities additional time to close on the purchases of the Units;

   c. to allow the Sunday's Entities to substitute Unit 3607 for the less expensive Unit 3208, and to apply the deposit from Unit 3607 toward the purchase of Unit 3208;

   d. to provide significant credits to the Sunday's Entities if they closed on the Units by May 30, 2011; and

   e. to provide additional valuable "Experience Incentives" that Wang could enjoy at the Project upon closing.

18. In exchange, Wang, through the Sunday's Entities, agreed, among other things:

   a. to waive and release all claims that had been or could have been asserted against Irongate under the Sales Contracts, including any right to recover any portion of the deposits previously paid;

      b.    to close on each of the Units no later than June 27, 2011;

      c.    Through Sunday's Third Child, LLC, to make an additional non-refundable payment to Irongate in the amount of $98,790.00;

      d.    Through Sunday's Fourth Child, LLC, to make an additional non-refundable payment to Irongate in the amount of $101,790.00;

      e.    Through Sunday's Fifth Child, LLC, to make an additional non-refundable payment to Irongate in the amount of $107,590.00; and

      f.    Through Sunday's Child, LLC, to make an additional non-refundable payment to Irongate in the amount of $258,500.00.

19.    Wang, through Sunday's Third Child, LLC, paid just $50,000 of the agreed upon additional non-refundable payment of $98,790.00

20.    Wang, through Sunday's Fourth Child, LLC failed to pay any of the agreed upon additional non-refundable payment of $101,790.00.

21.    Wang, through Sunday's Fifth Child, LLC failed to pay any of the agreed upon additional non-refundable payment of $107,590.00.

22.    Wang, through Sunday's Child, LLC failed to pay any of the agreed upon additional non-refundable payment of $258,500.00.

23.    Wang, through the Sunday's Entities collectively, breached the Settlement Agreement by failing to pay the remaining $516,670.00 of additional non-refundable payments.

24. Ultimately, Wang and the Sunday's Entities did not close by June 27, 2011, and the Sales Contracts were terminated due to the failure to perform under the terms of the Settlement Agreement.

25. Litigation between Irongate and the Sunday's Entities proceeded in the United States District Court for the District of Hawaii under Civil No. 13-00502-DKW-WRP, wherein the Sunday's Entities asserted claims against Irongate, and Irongate asserted counterclaims against the Sunday's Entities.

26. On August 21, 2018, the United States District Court for the District of Hawaii recognized that the Sunday's Entities breached the Settlement Agreement, and entered judgment in favor of Irongate, and against the Sunday's Entities, as to Irongate's counterclaims against the Sunday's Entities (the "***First Judgment***"), in the total amount of $516,670.00 as follows:

    a. Sunday's Third Child, LLC, must pay to Irongate $48,790.00;

    b. Sunday's Fourth Child, LLC must pay to Irongate $101,790.00;

    c. Sunday's Fifth Child, LLC must pay to Irongate $107,590.00;

    d. Sunday's Child, LLC must pay to Irongate $258,500.00.

27. The First Judgment, as to Irongate's counterclaims, was affirmed by the Ninth Circuit on appeal, but the matter was remanded for further proceedings as to the Sunday's Entities' affirmative claims against Irongate.

28. The Sunday's Entities never satisfied the First Judgment.

29. By agreement between the Sunday's Entities and Irongate, the Sunday's Entities' affirmative claims against Irongate were submitted to binding arbitration, and, on March 2, 2022, the arbitrator issued his final decision, which decided all claims in favor of Irongate, and awarded Irongate $537,203.34 in attorneys' fees and costs as the prevailing party in the dispute (the "***Arbitration Award***").

30. On August 11, 2022, the United States District Court for the District of Hawaii entered a second judgment in favor of Irongate, and against the Sunday's Entities, confirming the Arbitration Award and the award of attorneys' fees and costs to Irongate in the amount of $537,203.34 (the "***Second Judgment***").

31. The Sunday's Entities have failed and refused to satisfy the Second Judgment.

32. The Sunday's Entities are devoid of significant assets, and were formed by Wang exclusively for the purpose of purchasing the Units.

33. The Sunday's Entities, and each of them, served as mere shells, instrumentalities, or conduits for Wang's purchase of the Units under the Sales Contracts.

34. On information and belief, the Sunday's Entities, and each of them, were undercapitalized at formation, such that, without funding from Wang, the Sunday's Entities had no capital or source of capital, and would not be able to, and could not,

perform under the respective Sales Contracts. To the extent that the Sunday's Entities, or any one of them, had any funds, such funds were commingled with those of Wang.

35. Wang is the sole owner and member of each of the Sunday's Entities, and exercises, and at all relevant times has exercised, complete dominion and control over all aspects of the relevant transactions, such that the Sunday's Entities, and each of them, have and had no separate mind, will, or existence of their own.

36. Wang is the sole manager of each of the Sunday's Entities.

37. Wang's residence address has served as the sole business or office address for each of the Sunday's Entities at all relevant times.

38. In the course of negotiating the Settlement Agreement, at various times, Wang spoke in terms of what <u>she</u> was willing to do, and thereby held out that she was acting on her own behalf and would be personally liable for the obligations of the Sunday's Entities under the Settlement Agreement.

39. On information and belief, the Sunday's Entities, and each of them, have no employees, and have never had any employees.

40. On information and belief, when applying for a mortgage in connection with the Sales Contracts, Wang applied in her personal capacity, the Sunday's Entities did not each seek financing as separate entities.

41. On information and belief, the Sunday's Entities, and each of them, did not follow corporate formalities, and did not maintain arm's length relationships with one another or with Wang.

42. On information and belief, Wang created and used the Sunday's Entities solely for the purpose of attempting to shield herself from personal liability in relation to the Sales Contracts, the purchase of the Units, and the Settlement Agreement.

43. On information and belief, had the Sunday's Entities performed under the Settlement Agreement and closed on the Sales Contracts, Wang intended to use the Units for her own benefit.

## COUNT I
### (Declaratory Relief)

44. Irongate realleges and incorporates paragraphs 1 through 43 as though fully stated herein.

45. There presently exists an actual controversy between Irongate and Wang with respect to Wang's obligation to satisfy the First Judgment and the Second Judgment. A declaration by this Court is necessary to resolve this controversy.

46. Irongate respectfully seeks a judicial declaration that:

   a. Sunday's Child, LLC is not only influenced and governed by Wang, but there is such a unity of interest that the individuality, or separateness, of Wang and Sunday's Child, LLC does not exist, and the facts are such that adherence to the fiction of the existence of Sunday's Child, LLC separate from Wang would sanction a fraud or promote injustice;

9

    b.    Sunday's Third Child, LLC is not only influenced and governed by Wang, but there is such a unity of interest that the individuality, or separateness, of Wang and Sunday's Third Child, LLC does not exist, and the facts are such that adherence to the fiction of the existence of Sunday's Third Child, LLC separate from Wang would sanction a fraud or promote injustice;

    c.    Sunday's Fourth Child, LLC is not only influenced and governed by Wang, but there is such a unity of interest that the individuality, or separateness, of Wang and Sunday's Fourth Child, LLC does not exist, and the facts are such that adherence to the fiction of the existence of Sunday's Fourth Child, LLC separate from Wang would sanction a fraud or promote injustice;

    d.    Sunday's Fifth Child, LLC is not only influenced and governed by Wang, but there is such a unity of interest that the individuality, or separateness, of Wang and Sunday's Fifth Child, LLC does not exist, and the facts are such that adherence to the fiction of the existence of Sunday's Fifth Child, LLC separate from Wang would sanction a fraud or promote injustice;

    e.    The First Judgment, insofar as it imposes liability on Sunday's Child, LLC, is enforceable against Wang personally, as the alter ego of Sunday's Child, LLC;

    f.    The First Judgment, insofar as it imposes liability on Sunday's Third Child, LLC, is enforceable against Wang personally, as the alter ego of Sunday's Third Child, LLC;

    g.    The First Judgment, insofar as it imposes liability on Sunday's Fourth Child, LLC, is enforceable against Wang personally, as the alter ego of Sunday's Fourth Child, LLC;

    h.    The First Judgment, insofar as it imposes liability on Sunday's Fifth Child, LLC, is enforceable against Wang personally, as the alter ego of Sunday's Fifth Child, LLC;

    i.    The Second Judgment, insofar as it imposes liability on Sunday's Child, LLC, is enforceable against Wang personally, as the alter ego of Sunday's Child, LLC;

    j.    The Second Judgment, insofar as it imposes liability on Sunday's Third Child, LLC, is enforceable against Wang personally, as the alter ego of Sunday's Third Child, LLC;

    k.    The Second Judgment, insofar as it imposes liability on Sunday's Fourth Child, LLC, is enforceable against Wang personally, as the alter ego of Sunday's Fourth Child, LLC;

    l.    The Second Judgment, insofar as it imposes liability on Sunday's Fifth Child, LLC, is enforceable against Wang personally, as the alter ego of Sunday's Fifth Child, LLC;

    m.    The First Judgment and the Second Judgment, in their entirety, are enforceable against Wang personally.

WHEREFORE, Irongate respectfully requests that this Court grant the following relief, alternatively or concurrently, in its favor and against Wang, as follows;

    A.    Declaratory relief as set forth above; and

    B.    Any such other and further relief as this Court deems appropriate.

DATED:  Honolulu, Hawaii, January 10, 2023.

*/s/ Maile S. Miller*
TERENCE J. O'TOOLE
ANDREW J. LAUTENBACH
MAILE MILLER

Attorneys for Plaintiff
IRONGATE AZREP BW LLC