IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| IRONGATE AZREP BW LLC, | ) | CIVIL NO. 23-00014 SOM-WRP |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT |
| | ) | INGRID WANG'S MOTION TO |
| vs. | ) | SET ASIDE DEFAULT JUDGMENT |
| | ) | |
| INGRID WANG, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER DENYING DEFENDANT INGRID WANG'S
MOTION TO SET ASIDE DEFAULT JUDGMENT**

**I.       INTRODUCTION.**

This case arises from a prolonged dispute over the
failed purchase of four condominium units at the Trump
International Hotel and Tower (the "Project") in Waikiki, O'ahu.
Before the court is Defendant Ingrid Wang's motion to set aside
a default judgment entered against her by the Clerk of Court on
August 9, 2023, ECF No. 68, and Plaintiff Irongate Azrep BW
LLC's countermotion for default judgement, ECF No. 74.  The
court declines to set aside the default judgment and concludes
that the Clerk's actions were proper.

**II.      BACKGROUND.**

**A.    The Prior Litigation.**

Wang has been in litigation with Irongate, the Project
developer, for over a decade.  *See* ECF No. 11, PageID # 75.
Wang is the sole creator, owner, member, and manager of four

Hawaiʻi limited liability companies:  Sunday's Child, LLC; Sunday's Third Child, LLC; Sunday's Fourth Child, LLC; and Sunday's Fifth Child, LLC (collectively, the "Sunday's Entities").  ECF No. 74-10, PageID # 576, 585.  In 2006, Wang formed the Sunday's Entities to hold title to four Project condominium units to be purchased from Irongate.  *Id.* at PageID # 586, 595-96.  Under oath, Wang admitted that she did not initially capitalize the Sunday's Entities or even later put any money into them.  *Id.* at PageID # 586-87.

Shortly after their creation, the Sunday's Entities executed sales contracts for the Project units, and Wang advanced deposits to Irongate totaling $1,439,320, which was twenty percent of the units' collective purchase price.  ECF No. 1, PageID # 3; ECF No. 76, PageID # 674 (citing ECF No. 74-10, PageID # 593-94).

The Sunday's Entities later defaulted on the sales contracts.  ECF No. 10-1, PageID # 27.  They entered into a settlement agreement with Irongate in 2011.  *Id.* at PageID # 28.  The settlement agreement gave the Sunday's Entities an opportunity to close on the four units, but it also obligated them to make additional nonrefundable deposits to Irongate totaling $516,670.  *Id.*  The settlement agreement stipulated that if the Sunday's Entities failed to close, they would lose the original deposits ($1,439,320), and the additional deposits

($516,670) would be retained by Irongate as compensation for the breach of the agreement. *Id.*

The Sunday's Entities subsequently failed to close on the units and sued Irongate. *Id.* From 2013 to 2022, the underlying litigation in this case between Irongate and the Sunday's Entities took place before another judge in this district. *See* Civ. No. 13-00502 (D. Haw.). In that case, the court sanctioned Wang individually for, *inter alia*, aiding the Sunday's Entities' attorney in "filing baseless pleadings based upon knowingly false information" and "engaging in dilatory conduct." ECF No. 74-9, PageID # 565 (copy of the court's order, ECF No. 224, in Civ. No. 13-00502 (D. Haw.)). On appeal, those sanctions were vacated as part of the Ninth Circuit's reversal of the district court's grant of summary judgment in favor of Irongate on Wang's claims. ECF No. 75-2, PageID # 655 (copy of Ninth Circuit memorandum disposition). The Ninth Circuit upheld the district court's grant of summary judgment in favor of Irongate on its counterclaim. *Id.*

Ultimately, Irongate obtained judgments against the Sunday's Entities totaling $1,053,873.34. ECF No. 74, PageID # 439-40; ECF No. 20-2 (first judgment); ECF No. 75-2 (Ninth Circuit memorandum disposition affirming the first judgment); ECF No. 20-4 (arbitrator's final award); ECF No. 74-13, PageID # 620 (copy of court order, ECF No. 376, in Civ. No. 13-00502

3

(D. Haw.) confirming arbitrator's final award, which the parties refer to as the "second judgment"). It appears that the Sunday's Entities have not paid any of the $1,053,873.34 owed to Irongate. ECF No. 74, PageID # 424.

### B.   The Present Action.

In the present action, Irongate seeks to hold Wang individually liable for the debts of the Sunday's Entities on the ground that the Sunday's Entities are "empty shells," with no assets against which Irongate might collect. *Id.*

In October 2022, Irongate emailed a draft copy of its complaint to the attorney who represented the Sunday's Entities in the prior litigation. ECF No. 74-3, PageID # 460-72. The email stated:

> Can you please let Ms. Wang know that, if her Sunday's Entities cannot or will not pay the judgments, or the matter is not otherwise resolved, Irongate intends to file the attached complaint in order to hold her personally liable.
>
> If Ms. Wang would prefer to engage in [] meaningful settlement discussions in an effort to avoid further litigation, Irongate is willing to do so, and requests that Ms. Wang make an offer that reflects a reasonable effort to move this conversation forward.

*Id.* at PageID # 460. The attorney responded the same day, stating that the "threat will be passed on to Ingrid [Wang]." ECF No. 74-4, PageID # 474. However, neither the attorney nor Wang ever responded to the substance of Irongate's request to engage in settlement discussions. ECF No. 74-1, PageID # 454.

On January 10, 2023, Irongate filed its complaint, seeking a declaratory judgment that Wang is the alter ego of each of the Sunday's Entities and permission to enforce the prior judgments against Wang personally.  ECF No. 1, PageID # 2. Irongate styled its complaint as a declaratory action, but it also included on the civil cover sheet a demand for $1,053,873.44—the amount the Sunday's Entities owe to Irongate from the two prior judgments.  *Id.* at PageID # 12.

### 1.   Initial Attempts at Service.

Irongate unsuccessfully attempted to serve Wang for seven months.

On January 12, 2023, a process server attempted to personally serve Wang at her home in Kailua, Oʻahu.  A "small built, elderly woman" approached the door, which was partially made of glass, but the woman did not open the door.  ECF No. 10-3, PageID # 40-41.  The process server asked for Ingrid Wang and stated that he had documents for her.  *Id.* at PageID # 41.  The woman directed him to "their" attorney.  *Id.*  She did not represent that she was Wang.  *Id.*

The next day, the process server again attempted service at Wang's residence in Kailua.  *Id.* at PageID # 41.  No one came to the door.  *Id.*  He then tried to serve Wang through the Sunday's Entities' attorney at his law firm.  *Id.*  The

attorney was not present, and his staff said that staff was not authorized to accept service on Wang's behalf.  *Id.*

Later that day, the attorney emailed Irongate's counsel, stating, "I'm not authorized to accept service for Ingrid at this point but if you can email me whatever the complaint or other documents was, I can reach out to her."  ECF No. 74-5, PageID # 477.  Irongate's counsel thereafter emailed the complaint to the attorney and stated, "Let us know if you can accept service or if there's another attorney that can." *Id.*  The attorney later called Irongate's counsel to say that he was unwilling or unable to accept service on Wang's behalf.  ECF No. 74-2, PageID # 458.

On January 19, 2023, the process server again tried to serve Wang at her residence.  ECF No. 10-3, PageID # 41.  A "Caucasian woman" came to the door.  *Id.*  She stated that she was Wang's friend and that Wang was not around.  *Id.*

On January 28, 2023, the process server again attempted service at Wang's residence.  *Id.*  This time, a "Caucasian male" came to the door, but he stated that he did not know Wang.  *Id.*

The process server made three additional attempts to serve Wang at her residence on February 17, 2023, February 25, 2023, and March 5, 2023.  *Id.*  Each time, no one answered the door.  *Id.*

On February 16, 2023, Irongate's counsel mailed a waiver of service package in accordance with Federal Rule of Civil Procedure 4 to Wang's residence via U.S. first class mail and certified mail.  ECF No. 10-2, PageID # 37; ECF No. 10-4, PageID # 44.  The certified mail was returned unclaimed after three notices were left.  ECF No. 10-2, PageID # 37.  The first class mail appears to have been delivered at Wang's residence. *Id.*

### 2.   **Service By Publication.**

After these unsuccessful service attempts, Irongate filed an *ex parte* motion seeking leave to serve Wang (1) at her last known email address used in the underlying litigation, (2) via U.S. mail at her last known residence without a return receipt request, (3) through the Sunday's Entities' attorney, or (4) by publication.  ECF No. 10-1, PageID # 26-27.  Magistrate Judge Wesley Reber Porter granted Irongate's request in part, allowing service by publication in a newspaper pursuant to Hawai'i Revised Statutes ("HRS") § 634-36(b).  ECF No. 11, PageID # 86.  The order directed Irongate to file a proposed summons with the court by April 26, 2023.  *Id.*

On April 20, 2023, Irongate's counsel emailed the Sunday's Entities' attorney a copy of Judge Porter's order and explained that Irongate was preparing the summons to be published.  ECF No. 74-6, PageID # 491.  Counsel noted that if

Wang "execute[d] the waiver of service package" previously sent to her residence by April 24, 2023, Irongate would "not go forward with service by publication." *Id.* Irongate's counsel also asked the attorney to forward the email to Wang and to copy Irongate's counsel so that Irongate's counsel could reach Wang directly. *Id.* Neither the attorney nor Wang responded. ECF No. 74-1, PageID # 455.

On May 1, 2023, Irongate's counsel again emailed the attorney, attaching a copy of the summons that would run in the Honolulu Star Advertiser on May 10, 17, 24, and 31. ECF No. 74-7, PageID # 506. The summons stated:

TO:   INGRID WANG

YOU ARE HEREBY NOTIFIED that Plaintiff IRONGATE AZREP BW LLC has filed a Complaint in Civil No. 23-00014 SOM/WRP, pray for $1,053,873.34, its reasonable attorneys' fees and costs, and any further relief that this Court deems proper.

YOU ARE HEREBY SUMMONED to appear before the Honorable Wes Reber Porter at the Return Hearing on July 17, 2023 at 10:00 AM *or* to file an answer or other pleading and serve it before said day upon Plaintiff IRONGATE AZREP BW LLC'S attorney, MAILE S. MILLER of STARN O'TOOLE MARCUS & FISHER whose address is 733 Bishop Street, Suite 1900, Honolulu, Hawaii 96813. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.
The Return Hearing set for July 17, 2023 at 10:00 AM before Magistrate Judge Wes Reber Porter will be held telephonically. Parties are to participate via telephone through Zoom. Call in information is below. Participants must connect to the conference at least ten (10) minutes prior to the scheduled start time of the hearing. Dial in number is 1-833-568-8864; Meeting ID is: 161 0084 2470.

ECF No. 74-7, PageID # 508.  Once again, the attorney and Wang

did not respond.  *Id.* at PageID # 506-07.

On the July 17, 2023.

Neither Wang nor an attorney representing Wang

appeared at the return hearing on her behalf on July 17, 2023.

ECF No. 16.  During the hearing, Irongate's counsel informed the

court that it would request an entry of default.  *Id.*

### 3.   Entry of Default, Default Judgment, and Garnishee Summons.

Irongate subsequently filed a request for entry of

default, ECF No. 17, which the Clerk entered on July 27, 2023,

ECF No. 18.  Following the entry of default, Judge Porter

directed Irongate to file for default judgment no later than

September 25, 2023.  ECF No. 19.

Irongate did so file on August 7, 2023.  ECF No. 20,

PageID # 108-09.  The Clerk entered default judgment two days

later on August 9, 2023.  ECF No. 21.

On September 6, 2023, Irongate began issuing *ex parte*

garnishee summons to freeze Wang's bank accounts.  *E.g.*, ECF No.

22.  Then, on October 30, 2023, the Sunday's Entities' attorney

informed Irongate's counsel that he was representing Wang and

requested that Irongate set aside the default judgment and

release its garnishment on certain accounts.  ECF No. 74-8,

PageID # 510-11.  Irongate's counsel rejected both requests.

*Id.*

A few weeks later, Wang moved to set aside the entry of default and default judgment against her.  ECF No. 68.

## III.    JURISDICTION.

The court has jurisdiction pursuant to 21 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the parties are diverse.  *See* ECF No. 1, PageID # 2 (stating that Irongate is a Delaware limited liability company and is seeking in excess of the statutory amount); ECF No. 68 (not contesting jurisdiction and stating that Wang is a "dual resident" of the Philippines and Hawaiʻi).

## IV.     DISCUSSION.

### A.   Relief from the Entry of Default and Default Judgment is not Warranted.

Under Federal Rule of Civil Procedure 55(c), a district court may set aside the entry of default upon a showing of good cause.  Once default judgment has been entered, Rule 60(b) governs relief.  The decision to set aside default judgment is discretionary and limited by three considerations. "First, since Rule 60(b) is remedial in nature, it must be liberally applied."  *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987).  "Second, default judgments are generally disfavored and cases should be decided on their merits."  *Id.*  "Third, where [a] defendant seeks timely relief from the judgment and has a meritorious defense, doubt, if any,

should be resolved in favor of the motion to set aside the judgment." *Id.*

 "Where a defendant seeks relief under Rule 60(b)(1) based upon 'excusable neglect,' the court applies the same three factors governing the inquiry into 'good cause' under Rule 55(c)." *Brandt v. Am. Bankers Ins. Co.*, 653 F.3d 1108, 1111 (9th Cir. 2011). Those factors are: "(1) whether the plaintiff will be prejudiced by the reopening of the default judgment, (2) whether the defendant has a meritorious defense to the default judgment, and (3) whether the culpable conduct of the defendant led to the default." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984). The *Falk* factors are disjunctive, so a "district court is free to deny relief 'if any of the three factors is true.'" *Brandt*, 653 F.3d at 1111 (quoting *Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004)).

 "The determination of what conduct constitutes 'excusable neglect' under Rule 60(b)(1) and similar rules 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" *Id.* (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd.,* 507 U.S. 380, 395 (1993)). "The application of Rule 60(b)(1)'s excusable neglect standard 'is committed to the discretion of the district court.'" *Id.* at 1112 (quoting *TCI Grp. Life Ins. Plan v.*

*Knoebber*, 244 F.3d 691, 695 (9th Cir. 2001)).  "As is true with respect to any Rule 60(b) motion and with respect to a defaulting party invoking Rule 55(c), the party seeking to vacate a default judgment bears the burden of demonstrating that these factors favor vacating the judgment."  *TCI Grp. Life Ins. Plan*, 244 F.3d at 696.

### 1. Setting Aside the Entry of Default and Default Judgment Would Prejudice Irongate.

The court first considers whether Irongate would be prejudiced by the reopening of the default judgment.  *See Falk*, 739 F.2d at 463.

As Irongate explains, the underlying litigation began in 2013, when the Sunday's Entities sued Irongate, and continued until 2022, when Irongate ultimately obtained two judgments against the Sunday's Entities, totaling $1,053,873.34.  ECF No. 74, PageID # 439-40.  Irongate explains that it "spent the last year" attempting "to move its claims forward"—efforts that it says have been frustrated by Wang's conduct.  *Id.* at PageID # 440.

In opposition to Wang's motion, Irongate contends that Wang has only appeared now because Irongate has found "assets"—Wang's frozen bank accounts—"that could satisfy the sum certain it is entitled to recover."  *Id*.  Irongate is concerned that granting Wang's motion would "nullify the current garnishment of

Wang's bank accounts, allowing her to move her funds offshore (perhaps to the Philippines, where she purportedly resides)." *Id.* Irongate contends that Wang's ability "to move and hide assets is, in and of itself, a prejudice to Irongate." *Id.* (citing *Franchise Holding*, 375 F.3d at 926-27).

Further, Irongate argues that it has not been paid any funds since obtaining the judgments, which is "prejudice in and of itself." *Id.* (citing *United States v. Rouse*, 2009 WL 1259964, at *4 (E.D. Mich. Apr. 30, 2009) ("If the Court sets aside the default judgment, then Plaintiff will be prejudiced by having to wait even longer to be repaid for the amounts it guaranteed roughly twenty years ago.").

Wang proffers no relevant counterarguments. *See* ECF No. 75, PageID # 644-45 (noting that "Irongate only obtained Default Judgment in August, 2023 after moving Swiftly to obtain default and then default judgment . . . . There is no reason why the case should not be decided on its merits as favored by the 9th Circuit.").

Notably, Wang fails to give any assurance that she will not move or hide assets. The court shares Irongate's concern that if the entry of default and default judgment are set aside, thereby nullifying the garnishment of Wang's accounts, there is a possibility that assets may be moved or hidden offshore, prejudicing Irongate.

In *Franchise Holding*, 375 F.3d at 926-27, the Ninth Circuit upheld a district court's determination that the possibility that a defendant would move and hide assets prejudiced the plaintiff.  On appeal, the defendant contended that it was "willing and able to settle any dispute," but the Ninth Circuit concluded that its failure to file a pleading in the district court until after the clerk had entered default, as well as its failure to make a payment in two years, "suggest[ed] otherwise."  *Id.*  Similarly, here, Wang filed no pleading in this action until her bank accounts were frozen after default judgment had been entered against her.  Nor has she or the Sunday's Entities made any payments on the judgments owed to Irongate that were finalized two years ago.

The court therefore concludes that Irongate would be prejudiced by the reopening of the default judgment.

### 2.   Wang's Defenses are not Meritorious.

The court next considers whether Wang has a meritorious defense to the default judgment.  *See Falk*, 739 F.2d at 463.  "A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense."  *TCI Grp. Life Ins. Plan*, 244 F.3d at 700.  "A 'mere general denial without facts to support it' is not enough to justify vacating a default or default judgment."  *Franchise Holding*, 375 F.3d at 926 (quoting *Madsen v. Bumb*, 419 F.2d 4, 6 (9th Cir. 1969)).

"But the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." *Id.* (citing *In re Stone*, 588 F.2d 1316, 1319 n. 2 (10th Cir. 1978) (explaining that the movant need only demonstrate facts or law showing the trial court that "a sufficient defense is assertible")).

Wang raises numerous defenses, alleging that the Sunday's Entities were not undercapitalized; that HRS § 428-303 precludes the imposition of the Sunday's Entities liabilities on Wang as member of the LLCs; that res judicata, laches, or the statute of limitations bars Irongate's claims; that Irongate failed to mitigate damages and was unjustly enriched; and that there is a judicial policy disfavoring forfeiture. ECF No. 68-1, PageID # 381-82; ECF No. 75, PageID # 637-44. The court concludes that Wang does not demonstrate that any of these defenses would be meritorious.

### a.   The Sunday's Entities Were Undercapitalized.

Wang first attempts to topple the "fulcrum" of Irongate's alter ego liability claim:  that the Sunday's Entities were undercapitalized. ECF No. 68-1, PageID # 381; ECF No. 75, PageID # 637-40.

The corporate veil can be pierced when a company is "so undercapitalized that it is unable to meet debts that may reasonably be expected to arise in the normal course of

15

business." *Laborers Clean-Up Cont. Admin. Tr. Fund v. Uriarte Clean-Up Serv., Inc.*, 736 F.2d 516 (9th Cir. 1984); *e.g., Carlson Produce, LLC v. Clapper*, No. 18-cv-07195-VKD, 2022 WL 2905157, at *5 (N.D. Cal. July 22, 2022); *Sheppard v. River Valley Fitness One, L.P.*, No. CIV.00-111-M, 2002 WL 197976, at *12 (D.N.H. Jan. 24, 2002) (the "proper measure of the sufficiency of a corporate entity's capitalization is not whether it can pay a potential judgment in a lawsuit, but, rather, whether it had sufficient assets to meet the obligations incurred by conducting ordinary business in the industry in which it operates."). Wang argues that her Sunday's Entities were not undercapitalized, and that Irongate's attempt to pierce the corporate veil is therefore not justified. *See* ECF No. 68-1, PageID # 381; ECF No. 75, PageID # 637-40.

However, Wang provides no evidence that the Sunday's Entities were sufficiently capitalized to contract with or purchase the Project units from Irongate. *See* ECF No. 68-1, PageID # 381; ECF No. 75, PageID # 637-40. She argues that her payment of the initial deposits in 2006 demonstrates that the Sunday's Entities were not undercapitalized. ECF No. 68-1, PageID # 381; ECF No. 75, PageID # 637. But Wang—not the Sunday's Entities—paid the initial deposits in 2006 from her personal bank account. *See* ECF No. 74-10, PageID # 593-95. She admitted under oath that the Sunday's Entities were not

16

initially capitalized and that money was never put into them.
*Id.* at PageID # 586-587; *see also* ECF No. 74-9, PageID # 565-66
(determining that the Sunday's Entities were "devoid of any
significant assets").

### b. HRS § 428-303 Does Not Preclude Imposing Liability on Wang.

Wang next argues that she, as a member of the Sunday's
Entities, cannot be held liable for the Entities' debts pursuant
to HRS § 428-303.  ECF No. 69, PageID # 381; ECF No. 75, PageID
# 641-44.

HRS § 428-303 provides that, absent a provision in an
LLC's articles of incorporation and written consent, LLC members
and managers "shall not be personally liable for any debt,
obligation, or liability of the company solely by reason of
being or acting as a member or a manager."  HRS § 428-303(a),
(c).

However, under Hawaiʻi law,[1] the alter ego doctrine
allows courts to "look past" an entity's "formal existence" to
controlling individuals liable for the entity's obligations when
the entity is a "mere instrumentality or business conduit" of
another person.  *David Sansone Co., Inc. v. Waiaha Ridge LLC*,
No. 20-00411 HG-RT, 2022 WL 1212922, at *8 (D. Haw. Apr. 25,

---

[1]  The existence of alter ego liability is determined by the law
of the forum state.  *In re Schwarzkopf*, 626 F.3d 1032, 1037 (9th
Cir. 2010).

2022) (applying *Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., Inc.*, 91 Hawai'i 224, 240-41, 982 P.2d 853, 869-70 (1999)); *accord Estacion v. Kaumana Drive Partners, LLC*, Civ. No. 19-cv-00255 JMS-KJM, 2019 WL 5295183, at *4 (D. Haw. Oct. 18, 2019) (concluding that the plaintiff was barred from asserting a Hawai'i Whistleblower's Protection Act claim against LLC members unless the plaintiff could show that the LLC was the alter ego of the members).

To establish alter ego liability, a plaintiff must demonstrate that (1) the entity is "not only influenced and governed by a particular person, but that there is such a unity of interest that the individuality or separateness between the person and corporation has ceased" and (2) that "to adhere to the fiction of corporate separateness would, under the circumstances, sanction fraud or promote injustice." *David Sansone Co.*, 2022 WL 1212922, at *7 (quoting *Robert's Haw. Sch. Bus*, 91 Hawai'i at 242, 982 P.2d at 871).

Here, Wang is undoubtedly the alter ego of the Sunday's Entities. She is their sole creator, owner, member, and manager. ECF No. 74-10, PageID # 576, 585. She formed the Sunday's Entities for the express purpose of holding title to the Project units. *Id.* at PageID # 586, 595-96; ECF No. 74-9, PageID # 565 (concluding that the Sunday's Entities were "formed exclusively for the purpose of purchasing the four Project

18

Units.").  As discussed above, Wang paid the initial deposits for the Project units from her personal bank account, and she admitted under oath that the Sunday's Entities were never capitalized.  *See* ECF No. 74-10, PageID # 586-587, 593-95.  This court agrees with its colleague's observation in the underlying litigation that Wang had "complete dominion and control over all aspects of the relevant transactions so that the Sunday's [Entities] had no separate mind, will, or existence of their own."  ECF No. 74-9, PageID # 565-66, *see also* PageID # 566 n.26 (justifying the court's exercise of personal jurisdiction over Wang for the sole purpose of imposing sanctions because the Sunday's Entities were Wang's alter egos).

Adhering to the fiction of corporate separateness between the Sunday's Entities and Wang would promote injustice given that Irongate cannot recover against the undercapitalized Sunday's Entities.

The court thus concludes that Wang is the alter ego of the Sunday's Entities.  As such, HRS § 428-303 does not preclude imposing liability for the Sunday's Entities debts on Wang.

> ### c.  Irongate's Claims are not Barred by Res Judicata, Laches, or a Statute of Limitations.

Wang also claims that res judicata, laches, or a statute of limitations bars Irongate's claim against Wang personally. ECF No. 68-1, PageID # 382; ECF No. 75, PageID

# 640-41.  But she provides little more than threadbare support
for these defenses.  She cites the court's order in the
underlying litigation sanctioning her personally for her conduct
in support of her claim that Irongate knew or should have known
it might have claims against her individually years ago.  ECF
No. 75, PageID # 641 (citing ECF No. 74-10, PageID # 565).  She
also cites *Eastern Savings Bank, FSB v. Esteban*, 129 Hawaiʻi 154,
160, 296 P.3d 1062, 1068 (2013), but provides no explanation.
*See* ECF No. 75, PageID # 641.  She makes no arguments in support
of the application of the equitable doctrine of laches, nor does
she cite any specific statute of limitations that she seeks to
have applied in this case.

Wang has the burden of proving the existence of
meritorious defenses and "must present specific facts that would
constitute a defense."  *TCI Grp. Life Ins. Plan*, 244 F.3d at
696, 700.  A general assertion of a defense without supporting
facts is insufficient.  *See id.* at 700;  *Madsen*, 419 F.2d at 6
(holding that the district court did not err in declining to
vacate a default judgment when the defendant offered a "mere
general denial without facts to support it").

### d.  **Wang's Mitigation of Damages, Unjust Enrichment, and Forfeiture Defenses Fail.**

Wang also alleges that she has a meritorious defense
based on Irongate's purported failure to mitigate damages and

unjust enrichment, as well as the judicial policy disfavoring forfeiture. ECF No. 68-1, PageID # 381-82; ECF No. 75, PageID # 643-44. Wang does little to support these defenses, only offering conclusory statements and a block quote of a section from *Federal Practice and Procedure*. *See* ECF No. 75, PageID # 643-44; ECF No. 68-1, PageID # 381-82. Once again, a general assertion of a defense without supporting facts is insufficient. *TCI Grp. Life Ins. Plan*, 244 F.3d at 696, 700; *Franchise Holding*, 375 F.3d at 926; *Madsen*, 419 F.2d at 6.

Wang has failed to demonstrate that she has a meritorious defense to default judgment.

### 3.   Wang Fails to Prove that Her Conduct was not Culpable.

Finally, the court considers whether culpable conduct on the part of Wang led to the default. *See Falk*, 739 F.2d at 463. Wang contends that she was in the Philippines throughout the pendency of this case and was not timely notified by Irongate's counsel of the return hearing date or of the entry of default and default judgment entered against her. ECF No. 68-2, PageID # 385-87; ECF No. 68, PageID # 372. In support of these arguments, she provides her own declaration, as well as a declaration from her attorney.

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the

action and intentionally failed to answer." *TCI Grp. Life Ins. Plan*, 244 F.3d at 697; *see also Franchise Holding*, 375 F.3d at 926; *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 690 (9th Cir. 1988); *Meadows*, 817 F.2d at 521; *Benny v. Pipes*, 799 F.2d 489, 494 (9th Cir. 1986); *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 815 (9th Cir. 1985). "Intentional means 'willful, deliberate, or evidence of bad faith.'" *Kobayashi v. McMullin*, No. 2:19-CV-06591-DOC (MAA), 2022 WL 422823, at *2 (C.D. Cal. Jan. 7, 2022) (quoting *TCI Grp. Life Ins. Plan*, 244 F.3d at 697). "A defendant's conduct is generally deemed culpable where 'there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond.'" *Id.* (quoting *TCI Grp. Life Ins. Plan*, 244 F.3d at 698). "Neglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process" is not necessarily "culpable or inexcusable," although "it certainly may be." *TCI Grp. Life Ins. Plan*, 244 F.3d at 698-99.

Contending that Wang has failed to prove that her conduct was not culpable, Irongate points to credibility issues in Wang's and her attorney's declarations. ECF No. 76, PageID # 668-72; ECF No. 74, PageID # 429-37.

For example, in her declaration, Wang never actually denies being notified about the complaint or receiving it. Rather, she states that she was "not notified" of the return hearing date and subsequent entry of default and default judgment. *See* ECF No. 68-2.

Also, Wang initially stated that she had been in the Philippines continuously since 2019 and returned to Honolulu for the first time on October 21, 2023. ECF No. 68, PageID # 385-86. In an errata filed five days later, Wang clarified that she was in Honolulu from September 17, 2021, to October 29, 2021, but she maintained that she has resided in the Philippines continuously since 2019 other than that period. ECF No. 69, PageID # 398. Irongate points out that Wang has failed to disclose other instances when she was in Honolulu, such as on February 4, 2020, when she and her attorney were present before a magistrate judge in this district for a judgment debtor's exam. *See* ECF No. 74-10 (transcript of judgment debtor's exam). Irongate also points to an email from the attorney representing the Sunday's Entities and Wang to Irongate's counsel on February 3, 2020, stating "[o]bviously Ingrid is here and we are ready to go," ECF No. 74-11, PageID # 605, as well as a telephonic conference Wang participated in before a magistrate judge in this district on February 5, 2021, ECF No. 74-12, PageID # 607.

23

Significantly, Wang has not provided any documentation of airline tickets to the Philippines or any evidence from her passport regarding the timing of her trips back and forth.  ECF No. 74, PageID # 430.  Instead, she provides a receipt for her October 21, 2023, flight from the Philippines to Honolulu.  ECF No. 68-4.  She also provides a copy of her Philippines' Special Retiree Visa, but that card contains no documentation as to her comings and goings.  *See* ECF No. 68-5.  Overall, she has failed to support her assertion that she was in the Philippines throughout the seven-month period in which Irongate attempted to serve her.  *See* ECF Nos. 68, 69, 75.

Regarding the process server's attempts to serve her at her residence, Wang contends that the "small built elderly woman" the process server encountered during his first attempt was a housekeeper.  ECF No. 75, PageID # 636 n.3.  She provides no sworn declaration from herself or from the housekeeper.  Nor does she explain why a housekeeper would direct the process server to contact "their" attorney.  ECF No. 10-3, PageID # 41.

Irongate raises similar credibility issues with respect to the declaration from Wang's attorney.  ECF No. 74, PageID # 431.  The attorney claims that Irongate's counsel never notified him of the return hearing date.  ECF No. 68-3, PageID # 390.  But Irongate's counsel appears to have emailed the attorney a proof of the summons that was to run in the Honolulu

24

Star Advertiser, which stated the return hearing date, time, and location.  ECF No. 74-7, PageID # 506-08.

Wang's attorney does not deny having sent the complaint to Wang, as he told Irongate's counsel he would do. *See* ECF No. 68-3; ECF No. 74-5, PageID # 477 (email from the attorney sent on January 13, 2023, stating, "I'm not authorized to accept service for Ingrid [Wang] at this point but if you can email me whatever the complaint or other documents was, I can reach out to her."); ECF No. 74-4, PageID # 474 (email from the attorney sent on October 24, 2022, stating that the "threat will be passed on to Ingrid [Wang]").

The foregoing issues cause the court to doubt the credibility of Wang's contention that she did not have actual or constructive notice of the instant action until her bank account was frozen in September 2023.  Under the *Falk* factors, Wang bears the burden of demonstrating that her conduct leading to the default was not culpable.  *See Franchise Holding*, 375 F.3d at 926.  She does not carry her burden.

The satisfaction of just one *Falk* factor would justify the court's denial of relief, but all three factors have been met in this case.  Accordingly, the court declines to set aside the entry of default and default judgment.

**B.    The Clerk's Entry of Default Judgment was Proper.**

Wang argues that the default judgment is void because the Clerk of Court was not authorized to enter default judgment in a declaratory relief action.  ECF No. 68-1, PageID # 373-78.

On the "plaintiff's request, with an affidavit showing the amount due," the Clerk may enter default judgment if the "plaintiff's claim is for a sum certain or a sum that can be made certain by computation."  Fed. R. Civ. Pro. 55(b)(1).  The Ninth Circuit has explained that a "claim is not a sum certain unless no doubt remains as to the amount to which a plaintiff is entitled as a result of the defendant's default."  *Franchise Holding*, 375 F.3d at 929 (citing *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 19 n.7 (1st Cir. 2003)) (applying the First Circuit's approach in *KPS & Assocs.* to determine whether the plaintiff's claim was a "sum certain"); *HB Prods., Inc. v. Faizan*, No. 19-00487 JMS-KJM, 2020 WL 9763066, at *1 (D. Haw. March 20, 2020) (applying and discussing the Ninth Circuit's approach in *Franchise Holding*).

In *Franchise Holding*, the Ninth Circuit upheld a clerk's entry of default judgment because the plaintiff presented the clerk with documents setting forth specific formulas for determining the amount owed and the various amounts necessary for calculating the total amount due.  375 F.3d at 929.  The defendant took issue with the accuracy of the figures,

26

but it never specifically explained how the figures or calculations were wrong. *Id.* Instead, the defendant "argued its defenses to the underlying suit, defenses on which it had already defaulted." *Id.* The court thus concluded that the clerk had "calculated a sum certain." *Id.*

Irongate advocates for a similar outcome here. ECF No. 74, PageID # 441-42. In its request for default judgment, Irongate provided the Clerk with documents supporting the "sum certain" of Irongate's two prior judgments, amounting to $1,053,873.34. *See* ECF No. 20 (request for default judgment containing a computation of the "sum certain"); ECF No. 20-1 (affidavit from Irongate's counsel explaining the computation of the "sum certain"); ECF No. 20-2 (first judgment); ECF No. 20-3 (Ninth Circuit order affirming the first judgment); ECF No. 20-4 (arbitrator's final award); ECF No. 20-5 (court order confirming the second judgment).

Wang does not contest the computation or the total amount. Instead, she points to *Nevada General Insurance Co. v. Anaya*, 326 F.R.D. 685, 690 (D.N.M. 2018), in which the court stated that a clerk is "not authorized under Rule 55(b) to enter a default judgment in a declaratory judgment action." That case is distinguishable from this action. ECF No. 68-1, PageID # 376. In *Nevada General Insurance*, the plaintiff, an insurance company, sought a declaration that there was no insurance

27

coverage and that it had no duty to defend an insured for "damages" arising out of a car accident. 326 F.R.D. at 688. No "sum certain" was alleged in the plaintiff's filings.

By contrast, Irongate sought a "sum certain" in its request to the Clerk for entry of default, as well as in its complaint. While the complaint was styled as seeking declaratory relief, it specifically listed the amounts the Sunday's Entities owed Irongate from the first and second judgments. It also noted the damages sought from Wang—$1,053,873.34, the combined total of the judgements against the Sunday's Entities—on the civil coversheet. ECF No. 1, PageID # 6-7; ECF No. 1-1, PageID # 12.

Irongate was clearly seeking a "sum certain." This court therefore concludes that the Clerk properly entered default judgment against Wang.

## V.        CONCLUSION.

Relief from the entry of default and default judgment is not warranted. The Clerk's entry of default judgment, ECF No. 21, was proper.

Accordingly, the court DENIES Wang's motion to set aside the default judgment, ECF No. 68. The Clerk of Court is DIRECTED to terminate Irongate's countermotion for default judgment, ECF No. 74, as moot.

IT IS SO ORDERED.

DATED:    Honolulu, Hawai'i, January 26, 2023.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*Irongate Azrep BW LLC v. Wang*, Civ. No. 20-00014 SOM-WRP; ORDER DENYING DEFENDANT INGRID WANG'S MOTION TO SET ASIDE DEFAULT JUDGMENT.

29